**Opinion issued January 13, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00984-CR

———————————

**CHARLES HENRY JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1163962**

---

## O P I N I O N

A jury convicted appellant, Charles Henry Jones, of capital murder.[1]

Because the State did not seek the death penalty, the trial court automatically

---

[1] *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2014) (providing that person commits offense of capital murder if he intentionally causes death of individual in course of committing or attempting to commit robbery).

assessed punishment at confinement for life. In two issues, appellant contends that (1) the State failed to present sufficient evidence that he committed the underlying robbery; and (2) without this Court's conducting a factual sufficiency review of the evidence, he is "deprived of his right to meaningful review of his conviction."

We affirm.

## Background

Dung Nguyen and her husband, Thi Nguyen, the complainant, owned the Happy Food Store located in northwest Houston. On the morning of June 15, 2006, the Nguyens and their eleven-year-old son were all present in the store. Dung was standing behind the glass partition encasing the cash register, Thi was restocking beer, and their son was watching television. Through the window, Dung saw a white car pull up and two black men get out and walk into the store, a man who seemed tall to Dung and a man several inches shorter. Both men wore dark clothing and latex gloves, and the shorter of the men also wore a stocking over his face. The taller of the men held a gun and wore a long black wig.

The shorter of the men pushed Dung down on the floor and demanded to know where she kept the store's money. The taller of the men confronted Thi by the store's coolers, which were out of sight from the cash register. While Dung was trying to gather money, she heard two gunshots. The men stole several

hundred dollars and several boxes of cigarettes before fleeing the store. Thi died at the scene.

Dung acknowledged that police officers showed her a photo-array approximately one-and-a-half months after the shooting and that she was unable to identify anyone in the photo-array as one of the robbers. Dung did not identify appellant in court as one of the robbers.

Quoc Nguyen worked as a mechanic at the Quick Tune located across the street from the Happy Food Store. On June 15, 2006, he and one of his co-workers were working on a car when the Nguyens' son ran out of the Happy Food Store and told Quoc and his co-worker that the store had been robbed, that two men were still in the store, and that one of the men had a gun. Quoc saw two black men wearing dark clothing run out of the Happy Food Store and get into a white Acura Integra that had no license plates and drive away. Quoc and one of his co-workers got in their own car and followed the Integra until it stopped at a nearby house. He saw the passenger in the vehicle get out and run either into the house or to the side of the house. Quoc called 9-1-1 and reported the incident. Quoc and his co-worker waited down the street from the house for about thirty minutes before police arrived at the scene.

On cross-examination, Quoc testified that the driver of the car was not wearing gloves and that the passenger wore black gloves. He stated that the

3

passenger wore either a bandana or a ski mask, and he could not tell whether the passenger had long hair or not. Quoc could not remember whether the men were light or dark skinned. Quoc agreed that he never got a good look at the faces of the men and that he was never able to identify the robbers.

Venissa Rogers testified that she was in Houston visiting her aunt on June 15, 2006. Rogers' aunt had opened her front door, and while Rogers was sitting on her aunt's sofa she heard squealing tires outside. Rogers ran to the door and saw a white car "pull in real fast at a house" across the street and about three houses over from her aunt's house. She saw two young black men jump out of the car. Rogers was closer to the passenger side of the car, and she saw the passenger, once he got out of the car, "mak[e] motions of pulling off clothing." Rogers saw the passenger, who also had something over his face, pull off a pair of gloves. Rogers testified that both men ran by the side of the house towards a bayou behind the house. She also stated that another car pulled up, and the occupants of that car—Quoc Nguyen and his co-worker—watched the men abandon the white car. Once police arrived after Quoc called 9-1-1, Rogers relayed what she had seen. Rogers testified that because the men had worn something covering their faces she could not identify either of them.

Former Houston Police Department ("HPD") K-9 Officer D. Thomas testified that, after the first officers arrived at the house near the Happy Food Store,

4

he and his dog, Rudy, were dispatched to the house. One of the officers who had helped secure the scene informed Officer Thomas that a baseball cap had been located along a small bayou behind the house, and Thomas took Rudy to that location in an attempt to track the suspects' movements. While tracking, Officer Thomas and Rudy discovered a black T-shirt in a culvert near the house. Rudy then tracked to some clothing, a wig that had an orange hair tie in it, and some latex gloves[2] in close proximity to one another in the woods on the other side of the bayou from the house. These clothes did not look as though they had been sitting in the woods for a lengthy period of time. While near the location where he and Rudy had discovered the clothing, Officer Thomas spoke with a man who informed him that he had seen two men in the woods who looked as if they were changing clothing but who ran off when a police helicopter circled overhead.

HPD Sergeant W. Booth, one of the homicide detectives assigned to the case, stated that the officers showed several of the items recovered from the woods, including the wig, on television in the hope that someone might come forward with further information. Sergeant Booth spoke with Kendra Bonner, who saw the television broadcast and recognized the wig and, specifically, the hair tie in the wig. Sergeant Booth testified that he and his partner subsequently developed Kevin Chaney and a man with the nickname of "Dumpling" as suspects in Thi

---

[2]     HPD Sergeant G. West specified that the gloves were found inside out.

Nguyen's murder. Sergeant Booth stated that, during the investigation, he determined that "Dumpling" was appellant and that appellant and Chaney were connected in that both had children with the same woman. Sergeant Booth also testified that appellant is several inches taller than Chaney.

Clay Davis, a DNA analyst with the HPD crime lab, conducted DNA testing on several pieces of evidence in this case, including swabs from a baseball cap, a work shirt, a stocking, two pairs of pants, and three latex gloves. Davis testified that, after comparing appellant's known DNA profile to the DNA profile obtained from a work shirt found by Officer Thomas in the woods, appellant could not be excluded as a contributor to the profile on the shirt and that the probability that an unrelated individual could be a possible DNA contributor was 1 in 1.5 quintillion for African Americans. Appellant also could not be excluded as a contributor to the DNA mixture found on the baseball cap, although the probability that an unrelated individual could be a contributor for that piece of evidence was 1 in 78 for African Americans. Appellant also could not be excluded as a contributor to the DNA profile found on the T-shirt, and the probability that an unrelated individual could be a contributor was 1 in 50 trillion for African Americans. Kevin Chaney could not be excluded as a possible contributor to the DNA mixture found on one of the latex gloves and on the stocking.

Davis testified that he tested two cuttings from a pair of pants found in the woods. For one of those cuttings, taken from a leg of the pants, Thi Nguyen could not be excluded as a possible contributor to the DNA profile. Davis also tested a cutting from the waistband of that pair of pants. Appellant could not be excluded as a contributor to that DNA profile, and the probability that an unrelated individual could be a contributor was 1 in 98 quadrillion for African Americans. Thi Nguyen and Kevin Chaney were both excluded as contributors to the DNA profile from the waistband cutting.

Davis also took two swabs from one of the latex gloves, one swab from the outside of the glove and one swab from the inside of the glove. Thi Nguyen could not be excluded as a contributor to the DNA mixture on the outside of the glove, but both appellant and Chaney were excluded as contributors. The swab from the inside of the glove included a mixture of at least three individuals. Appellant could not be excluded as a possible contributor; and the probability that an unrelated individual was the contributor was 1 in 140 billion for African Americans. Thi Nguyen could not be excluded as a possible contributor for that mixture on the inside of the glove, and the probability that an unrelated individual contributed that DNA profile was 1 in 850 for Caucasians. Kevin Chaney could be excluded as a contributor to that mixture. Davis concluded that appellant was the major contributor to that mixture and Thi Nguyen a minor contributor. Davis

7

acknowledged on cross-examination that DNA analysis cannot determine when a particular DNA profile was deposited on an item. He thus agreed that he could not tell the jury that appellant was wearing the tested items of clothing on June 15, 2006.

Larry Jones, appellant's younger brother, testified on appellant's behalf. Jones testified that he gave appellant a car in early June 2006 and that appellant left the car in Houston while they attended a family reunion in Victoria before the robbery of the Happy Food Store. Jones stated that when he and appellant returned from their reunion they discovered that someone had broken into appellant's car and stolen the stereo system. Jones did not know what else had been taken from appellant's car, but he believed clothes could have been in the car and could have gone missing. Jones acknowledged on cross-examination that appellant's nickname was "Dumpling."

The jury ultimately found appellant guilty of capital murder, and the trial court automatically assessed punishment at confinement for life. This appeal followed.

## Sufficiency of the Evidence

In his first issue, appellant contends that the State failed to present sufficient evidence that he committed the underlying robbery. In his second issue, appellant

8

argues that this Court should apply factual-sufficiency standards of review when analyzing the sufficiency of the evidence to support his conviction.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the

jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### B. Capital Murder

To establish that appellant committed the offense of capital murder as charged in the indictment, the State had to prove that appellant, while in the course of committing and attempting to commit the offense of robbery, intentionally caused the death of Thi Nguyen by shooting him with a deadly weapon. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2014); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (noting that State is required

to prove beyond reasonable doubt that accused is person who committed charged crime). "[T]he identity of the alleged perpetrator may be proven by circumstantial evidence." *Orellana v. State*, 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.)). The State may also establish identity by inferences. *Roberson*, 16 S.W.3d at 167. "For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative." *Id.* (citing *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989)).

Here, Dung Nguyen testified that two black men robbed the Happy Food Store on June 15, 2006, and one of the men shot and killed her husband, Thi Nguyen. Both of the robbers wore latex gloves, and the taller of the two men wore a long, black wig and carried a gun. Quoc Nguyen testified that he saw two black men run out of the Happy Food Store and drive away from the scene in a white Acura Integra. Quoc and one of his co-workers followed the Integra until it pulled into the driveway of a nearby house. Quoc and Venissa Rogers, watching from a few houses down the street, both saw two men get out of the car and run to the side of the house. Both Quoc and Rogers testified that they saw at least one of the men wearing gloves, and Rogers testified that she saw the passenger pulling off his gloves and attempting to remove his clothing.

11

Officer Thomas testified that his dog, Rudy, tracked the scent of the men who had abandoned the Integra to a baseball cap behind the house, to a t-shirt located in a culvert near the bayou that ran behind the house, and to discarded clothing, a long black wig with an orange hair tie, and latex gloves—all located in close proximity to each other in the woods on the other side of the bayou from the house. Officer Thomas spoke with a man who informed him that he saw two men who appeared to have been changing clothes in the woods, but the men ran off when a police helicopter circled overhead. When HPD officers released the information that clothing and a wig had been found, Kendra Bonner informed officers that she recognized the wig and the orange hair tie in the wig. After speaking with Kendra, officers developed Kevin Chaney and a man nicknamed "Dumpling" as suspects. Officers later determined that "Dumpling" was appellant, and appellant's brother, Larry Jones, confirmed that "Dumpling" is appellant's nickname. Chaney and appellant both have children with the same woman, and Chaney is several inches shorter than appellant.

DNA testing revealed that Chaney could not be excluded as the contributor to the DNA profiles found on one of the latex gloves and on the stocking. Appellant could not be excluded as a contributor to the DNA profiles located on the baseball cap, a work shirt, and a t-shirt. DNA analysts also took two cuttings from a pair of pants: one from a pants leg and the other from the waistband of the

12

pants. Thi Nguyen could not be excluded as the contributor to the DNA profile located on the cutting taken from the pants leg, and appellant could not be excluded as a contributor to the DNA profile located on the cutting taken from the waistband. Nguyen and Chaney were both excluded as contributors to the DNA profile on the cutting from the waistband. DNA analysts also took two swabs from a latex glove found in the woods, one from the inside of the glove and one from the outside. The DNA profile taken from the inside of the glove revealed a mixture of contributors, but appellant could not be excluded as the major contributor to that mixture, although Chaney could be excluded. Thi Nguyen could not be excluded as a contributor to the DNA profile from the outside of the glove, and Chaney and appellant could both be excluded as contributors.

The State thus presented evidence connecting appellant to discarded clothing and gloves that also contained the DNA profile of Thi Nguyen, the complainant. As appellant notes, no other testimony established a connection between appellant and Nguyen that could explain how Nguyen's DNA profile ended up on clothing that also contained appellant's DNA profile. Appellant presented testimony from his brother that appellant's car had been burglarized shortly before Nguyen's murder, and his brother testified that it was possible that whomever had stolen the stereo system from appellant's car also took clothing from the car. However, as the State points out, the DNA tests of the clothing and the gloves revealed

13

appellant as the major contributor to the DNA profile, with the exception of the two cuttings in which Thi Nguyen was the major contributor. It was reasonable for the jury to infer, based on the evidence presented, that appellant and Nguyen were the major contributors to the DNA profiles on the pants and one of the latex gloves because appellant was wearing the pants and the glove when he shot Nguyen. *See Roberson*, 16 S.W.3d at 167 (stating that State may establish identity by circumstantial evidence and by inference).

Viewing the evidence in the light most favorable to the verdict, we hold that the State presented sufficient evidence for a reasonable fact finder to conclude beyond a reasonable doubt that appellant was one of the robbers of the Happy Food Store and thus involved in Thi Nguyen's murder.

We overrule appellant's first issue.

### C. Entitlement to Factual Sufficiency Review

In his second issue, appellant argues that, without factual sufficiency review, he is deprived of his constitutional right "to meaningful review of his conviction."

In *Brooks v. State*, the Court of Criminal Appeals concluded that "there is no meaningful distinction between a *Clewis [v. State]* factual sufficiency standard and a *Jackson v. Virginia* legal-sufficiency standard" and held that the *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense

14

that the State is required to prove beyond a reasonable doubt." 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In the four years since *Brooks*, the Court of Criminal Appeals has repeatedly reaffirmed that appellate courts are to apply only the *Jackson* standard in reviewing the sufficiency of the evidence to support a conviction and that courts should not return to applying the factual sufficiency standard. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) ("As the court of appeals properly noted, this Court now applies only one standard 'to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency.'"); *Ex parte Flores*, 387 S.W.3d 626, 641 (Tex. Crim. App. 2012) (noting that court "did away with" factual sufficiency review in *Brooks*); *Adames*, 353 S.W.3d at 859 (holding that *Jackson* standard is only standard for courts to apply in determining sufficiency of evidence).

We decline appellant's invitation to apply pre-*Brooks* factual sufficiency standards to review the sufficiency of the evidence to support his conviction.

We overrule appellant's second issue.

**Conclusion**

We affirm the judgment of the trial court.

                                             Evelyn V. Keyes
                                             Justice

Panel consists of Justices Keyes, Higley, and Brown.

Publish.   TEX. R. APP. P. 47.2(b).