**Opinion issued August 8, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00804-CR

———————————

**KELLY JO IVEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1449456**

---

### MEMORANDUM OPINION

A jury convicted appellant Kelly Jo Ivey of the first-degree felony offense of intoxication manslaughter, causing the death of a peace officer with a deadly weapon, a motor vehicle. *See* TEX. PENAL CODE §§ 49.08–.09. Ivey pleaded true to an enhancement paragraph alleging that she had a previous conviction for

possession of a controlled substance. The jury assessed punishment at 60 years in prison and a $10,000 fine.

Ivey raises four appellate issues, including a challenge to the sufficiency of the evidence to support her conviction. She also argues that the trial court erred by denying her motion to suppress evidence and by overruling her objection to improper argument by the State during the punishment phase of trial. Finally, she contends that she received ineffective of assistance of counsel during the punishment phase.

We conclude that the State presented legally sufficient evidence to support Ivey's conviction and that the record does not support her claim for ineffective assistance of counsel. Additionally, Ivey's remaining issues do not demonstrate reversible error. Accordingly, we affirm the trial court's judgment.

## Background

While driving his Harris County Sheriff's Department vehicle, Deputy J. Valdez III was involved in a head-on automobile accident with a sport-utility vehicle on East Wallisville Road in Harris County. Appellant Kelly Jo Ivey and her husband, Casey Byfield, were in the SUV. After emergency personnel arrived at the scene of the accident, Valdez and Ivey were transported to a hospital for treatment. Valdez died at the hospital. Ivey received treatment in the emergency room, where she was interviewed by Deputy A. Albers. During the recorded

interview, Ivey said that she was driving the SUV and her husband was in the passenger seat. She also informed Albers that she had ingested methamphetamines prior to the accident. Albers placed Ivey under arrest.

After further police investigation, a grand jury indicted Ivey for the first-degree felony offense of intoxication manslaughter causing the death of a peace officer with a deadly weapon, a motor vehicle. The indictment also alleged that Ivey had a previous felony conviction for possession of a controlled substance.

Before trial, Ivey moved to suppress her recorded statement to Albers. She argued that the interview was a custodial interrogation, and because she was not given *Miranda* warnings, her statement was inadmissible. At the suppression hearing, Albers testified that before the interview he knew there had been a head-on accident, Valdez had died as a result, and Ivey may have been the driver of the other vehicle. He also testified about his interaction with Ivey during the interview. Albers told Ivey several times that she was not under arrest, and he testified that she could have left at any time and at no time was she placed in handcuffs. He did not, however, tell her she was free to leave. During the interview, Albers learned from other officers that Ivey was at fault for the accident. In response to his questions, Ivey said that Valdez had come into her lane, and she had swerved to miss him. The trial court denied Ivey's motion to suppress her recorded statement.

During the guilt-innocence stage of trial, the State called several witnesses to testify about the night of the accident and the results of the subsequent police investigation. The lead police investigator testified about a reconstruction of the accident. According to the investigator, Valdez had been driving in the correct lane, Ivey's vehicle had been heading in the opposite direction in the wrong lane, and the two cars collided. Additionally, he concluded that Ivey had been impaired as a result of the methamphetamines she had taken, that she was driving the vehicle that collided with Valdez, who was on duty at the time, and that her impaired state caused his death.

Albers testified about his interview with Ivey. The State played the recording of the statement she gave in the hospital. Several other officers testified that Ivey had identified herself as the driver of the vehicle at the time of the accident. Further, two witnesses opined that Ivey had been the driver of the vehicle because the injuries she sustained were consistent with those one would expect of the person driving the vehicle. Finally, the State introduced the results of blood tests taken from Ivey that confirmed she had methamphetamines in her system.

The jury found Ivey guilty of intoxication manslaughter of a peace officer with a deadly weapon.

At the punishment phase of trial, Ivey pleaded true to the enhancement allegation that she had a previous felony conviction for possession of a controlled

4

substance. She also stipulated that she previously had been convicted of several other offenses, including unauthorized use of a motor vehicle, "theft, third offender," forgery, and two thefts by check.

The State also produced evidence about the impact that Valdez's death had on his friends and family. This evidence included testimony from his mother, his son, and several law-enforcement officers who were his friends. Before the testimony from Valdez's son, defense counsel objected, arguing that the testimony would be unduly prejudicial. The trial court overruled the objection and allowed the 11-year-old boy, A.V., to testify. He initially testified that he wanted "to be a cop" when he grew up. He described things he used to do with his father, including fishing, going out to eat, and playing video games. A.V. said his father was his hero. Finally, near the end of his testimony, he testified about the impact his father's death had on the family dog.

During his closing argument on punishment, the prosecutor discussed September 11 and how that is a day "when we remember our heroes." He then instructed "every peace officer that is wearing a badge" to "stand up." Defense counsel objected to this argument, contending that it was improper and "highly prejudicial in front of the jury." The trial court overruled the objection and said, "Have a seat."

5

The jury assessed punishment at 60 years in prison and a $10,000 fine. Ivey appealed.

**Analysis**

Ivey raises four issues on appeal. First, she challenges the sufficiency of the evidence to support her conviction. Next, she argues that the trial court erred by denying her motion to suppress evidence of her recorded statement and by overruling her objection to the State's jury argument during the punishment phase. Finally, she contends that she received ineffective assistance of counsel during the punishment phase of trial.

## I.      Sufficiency of the evidence

Ivey challenges the sufficiency of the evidence to support her conviction. She contends that the evidence was insufficient to establish beyond a reasonable doubt that she was the driver of the SUV that struck Valdez's vehicle. Ivey argues that the State had minimal direct evidence identifying her as the driver of the vehicle.

We review the sufficiency of the evidence to support a criminal conviction by determining whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact rationally was justified in finding the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010). We measure the evidence "by the elements of the offense

6

as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Brooks*, 323 S.W.3d at 922. On appeal we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). For purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative. *Jones v. State*, 458 S.W.3d 625, 630 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

A person commits the offense of intoxication manslaughter causing the death of a peace officer if the person: (1) operates a motor vehicle in a public place; (2) is intoxicated; and (3) by reason of that intoxication causes the death of a peace officer, while in the actual discharge of an official duty, by accident or mistake. *See* TEX. PENAL CODE §§ 49.08–.09. Ivey only challenges whether the evidence was legally sufficient to support the jury's finding that she operated a motor vehicle. In assessing whether the evidence is sufficient to support that element, a court examines all of the evidence to determine whether it supports a finding that the appellant exerted personal effort to cause the vehicle to function.

7

*Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995); *Mitchell v. State*, 419 S.W.3d 655, 663 (Tex. App.—San Antonio 2013, pet. ref'd).

Ivey emphasizes evidence that indicated she may not have been driving the vehicle at the time of the accident. In particular, she relies upon the testimony of two witnesses who saw her husband get into the driver's side of the car before the accident. Despite this evidence, other evidence indicated that Ivey was driving the vehicle at the time of the accident. The most substantial of this evidence was Ivey's own admission, made to Albers after the accident, that she had been driving. This recorded admission was played for the jury. Additionally, another police officer testified that Ivey told him at the scene of the accident that Valdez "came over in my lane, and I swerved to miss him." Based on this statement, the officer concluded that Ivey had been driving. Further, several witnesses testified that the injuries Ivey sustained were consistent with those one would expect of a person driving the vehicle during the accident. As a result, they opined that Ivey had been driving.

Examining all of the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Ivey operated the vehicle at the time it crashed into Valdez's police cruiser. *See Mitchell*, 419 S.W.3d at 663; *Gowans v. State*, 995 S.W.2d 787, 791 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Thus, because no challenge has been raised to

the sufficiency of the evidence of the other elements of the offense, we conclude the evidence was legally sufficient to sustain her conviction. *See Brooks*, 323 S.W.3d 894–95. We overrule Ivey's challenge to the sufficiency of the evidence.

## II.  Motion to suppress

Ivey contends that the trial court erred by denying her motion to suppress the recorded statement that she gave to Albers in the hospital. She argues that the statement was the result of custodial interrogation, and therefore her rights were violated when she was not warned that her statement could be used against her. *See Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S. Ct. 1602, 1612 (1966).

"A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the trial court's ruling." *State v. Garcia– Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We use a bifurcated standard of review in assessing the trial court's ruling. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We grant the trial court almost complete deference in determining historical facts, and the trial court is the sole trier of fact and judge of the credibility of witnesses and the weight to be given their testimony. *Id.*

A trial court's ultimate custody determination is a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *Ervin v. State*, 333 S.W.3d 187, 203 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We defer almost totally to a trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Herrera*, 241 S.W.3d at 526–27. Conversely, we review a trial court's custody determination de novo when the questions of fact do not turn on credibility and demeanor. *Id*. at 527. When a trial judge denies a motion to suppress and does not enter findings of fact, the evidence is viewed in the light most favorable to the trial court's ruling and we assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Id*.

In *Miranda*, the United States Supreme Court determined that an accused person who is held in custody must be warned "at the outset" of interrogation. *Miranda*, 384 U.S. at 467–68, 86 S. Ct. at 1624; *see Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). Failure to comply with the *Miranda* warning requirements results in forfeiture of the use of any statement obtained during that interrogation by the prosecution during its case-in-chief. *Jones*, 119 S.W.3d at 772. Likewise, the Code of Criminal Procedure provides that a statement is only admissible if, among other requirements, the defendant was given statutory warnings before the statement was made and the defendant "'knowingly,

10

intelligently, and voluntarily'" waived the rights set out in the warnings. *Herrera*, 241 S.W.3d at 526 (quoting TEX. CODE CRIM. PROC. art. 38.22).

The record indicates that Ivey never received *Miranda* or article 38.22 warnings. But neither *Miranda* warnings nor article 38.22 warnings were required unless the interrogation of the accused was custodial. *Herrera*, 241 S.W.3d at 526; TEX. CODE CRIM. PROC. art. 38.22, § 3(a). The meaning of "custody" is the same for both *Miranda* and article 38.22 purposes. *Herrera*, 241 S.W.3d at 526.

The defendant bears the initial burden of proving that a statement was the product of a custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). A person is in "custody" only if, under the facts and circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The question turns on whether a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave. *Nguyen v. State*, 292 S.W.3d 671, 678 (Tex. Crim. App. 2009). The reasonable-person standard presupposes an innocent person. *Dowthitt*, 931 S.W.2d at 254.

The determination of custody is entirely objective, and the subjective intent of law-enforcement officials is not relevant unless communicated to the suspect. *Id*. The subjective belief of the suspect also is not relevant. *Id*. Generally, four

11

situations may constitute custody: (1) the suspect is physically deprived of her freedom of action in any significant way; (2) a law-enforcement officer tells the suspect she is not free to leave; (3) law-enforcement officers create a situation that would lead to a reasonable person to believe that her freedom of movement has been significantly restricted; or (4) there is probable cause to arrest the suspect, and law-enforcement officers do not tell the suspect she may leave. *Gardner*, 306 S.W.3d at 294; *Dowthitt*, 931 S.W.2d at 255.

Ivey contends that the fourth circumstance applies in this case. She argues that Albers knew prior to interviewing her in the hospital that Valdez had died and that the SUV had caused the accident. Additionally, she contends that Albers had been told she was the driver of the SUV. Based on this, Ivey argues that Albers had probable cause to arrest her prior to the interview, and he never told her she was free to leave. Therefore, she contends she should have received warning of her *Miranda* rights before Albers interviewed her.

Even if Ivey is correct that Albers had probable cause to arrest her prior to beginning the interview, or he developed probable cause during the interview, "situation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint

to the degree associated with an arrest." *Dowthitt*, 931 S.W.2d at 255; *see Gardner*, 306 S.W.3d at 294 n.48.

In a typical determination of whether restraint rises to the degree associated with arrest, several factors are considered, including the amount of force displayed, the duration of the detention, the efficiency of the investigative process, whether the restraint occurs at the original location or the person is transported to another location, and whether the officer told the detained person that the person was under arrest or was being detained only for a temporary investigation. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008). When restraint is due to medical treatment, and is not initiated by law enforcement, few of these factors apply. *Martinez v. State*, 496 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

No force was needed to restrain Ivey because she had been incapacitated by her injuries. Albers testified that Ivey was not handcuffed and she could have ended the interview at any time. Further, although Albers did not tell Ivey she was free to leave, he did tell her several times that she was not under arrest. Additionally, Ivey volunteered her statement that she had taken meth in response to Albert's open-ended questions about the events of the day before. The fact that Ivey incriminated herself, likely giving the police probable cause to arrest, did not,

in itself, create a custodial situation. *See Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010).

Assuming, without deciding, that there was probable cause to arrest Ivey before or sometime during her statement, these circumstances did not cause her to be placed in custody. It is the "'compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning [is] conducted'" that determines custody for *Miranda* purposes. *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994) (quoting *Beckwith v. United States*, 425 U.S. 341, 346–47, 96 S. Ct. 1612, 1616 (1976)). Although Ivey was a suspect, no evidence suggests that Albers restrained her to the degree associated with arrest, or that he deprived her of her physical freedom in any way before, during, or after the questioning.

Ivey did not meet her burden to show that a reasonable person in her circumstances would have felt deprived of freedom to the extent associated with formal arrest. *See Dowthitt*, 931 S.W.2d at 255. She was not in custody at the time she gave her statement to Albers, and therefore the *Miranda* warnings were not required for the statement to be admissible. *See Herrera*, 241 S.W.3d at 526. The trial court's denial of Ivey's motion to suppress was reasonably supported by the record. Accordingly, we overrule this issue.

### III. Improper jury argument

Ivey contends that the trial court erred by overruling an objection she made to the prosecutor's closing argument during the punishment phase of trial.

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The test for abuse of discretion is whether the ruling was arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Permissible jury argument falls into four distinct and limited categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). We examine allegedly improper argument "in light of the facts adduced at trial and in the context of the entire argument." *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989).

An improper argument will not constitute grounds for reversal unless the statements to the jury inject new and harmful facts into the case or are extreme and manifestly improper. *Brown*, 270 S.W.3d at 573 n.3; *McGee*, 774 S.W.2d at 238. "In determining whether jury argument is extreme or manifestly improper, we look

15

at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Brown*, 270 S.W.3d at 573 n.3.

Ivey complains of the following jury argument:

| | |
|---|---|
| State: | I thought about this this morning on the drive in. The longer we get away from September 11th, the more everyone goes back to their regular lives and tends to forget about what happened that day; and here are the 12 of you—13 of you on September 11th, a day when we remember our heroes and look out there and look at every peace officer.<br><br>Every peace officer that is wearing a badge stand up. |
| Defense Counsel: | Objection, Your Honor. That would be improper argument. It is highly prejudicial in front of the jury. |
| Court: | Overruled. Have a seat. |

After the trial court overruled the objection to the argument quoted above, the State argued:

| | |
|---|---|
| State: | Those men put on a bulletproof vest and they will give their lives for every one of you; and you know what, they probably in this case, they did give their life for her. |

16

Ivey contends the prosecutor's argument was highly prejudicial because it went beyond a proper plea for law enforcement and elevated Valdez's worth beyond that of a civilian.

In response, the State argues that the prosecutor's statements were a proper plea for law enforcement because by asking the peace officers to stand, the prosecutor was "reminding the jurors of the people who they were protecting with their sentence." A proper plea for law enforcement may take many forms. For example, the State has been permitted to argue the impact of the jury's verdict on narrower groups making up the "community." *See Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). This has included allowing the State to argue on behalf of law-enforcement officers who were the victims of a criminal offense. *See Freeman v. State*, 340 S.W.3d 717, 729–30 (Tex. Crim. App. 2011) (allowing prosecutor to argue about the consequences of killing a police officer); *Rhodes v. State*, 450 S.W.2d 329, 331–32 (Tex. Crim. App. 1970) (allowing prosecutor to tell the jury that through its verdict it could either show police officers "we don't mind if you get shot" or "we are proud of you and we appreciate what you are doing for us"). Further, in an argument about sentencing, a prosecutor may seek to place a moral responsibility upon jurors. *See, e.g.*, *Rocha v. State*, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000). Such an argument is a permissible plea for law enforcement. *Id.*

The challenged argument was made during the punishment phase. Ivey had been found guilty of intoxication manslaughter causing the death of a peace officer, and the task for the jury was to decide the appropriate sentence. Through its argument which referenced September 11 and the peace officers in the courtroom, the State placed a moral responsibility upon the jurors to protect and support other peace officers like Valdez through their verdict. We conclude that the trial court's decision to allow the State's argument fell within the zone of reasonable disagreement regarding whether the argument constituted a permissible plea for law enforcement. *See Freeman*, 340 S.W.3d at 729–30; *Borjan*, 787 S.W.2d at 56; *Rhodes*, 450 S.W.2d at 331–32. The trial court did not abuse its discretion by overruling Ivey's objection to the State's jury argument. *See Freeman*, 340 S.W.3d at 729–30; *Borjan*, 787 S.W.2d at 57; *Rhodes*, 450 S.W.2d at 331–32. Accordingly, we overrule this issue.

## IV.  Ineffective assistance of counsel

Ivey argues that her trial counsel rendered ineffective assistance by failing to object to testimony from Valdez's son during the punishment phase about the impact his death had on the family dog.

Claims that a defendant received ineffective assistance of counsel are governed by the standard announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Strickland* mandates a two-part test: (1) whether the

attorney's performance was deficient, i.e., whether counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and if so, (2) whether that deficient performance prejudiced the party's defense. 466 U.S. at 687, 104 S. Ct. at 2064. "The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats an ineffectiveness claim." *Shamim v. State*, 443 S.W.3d 316, 321 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011)). "When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible." *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002).

A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the appellant bears the burden to overcome the presumption that, under the circumstances, the challenged action was a result of sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. An accused is not entitled to perfect representation, and a reviewing court must look to the totality of the representation when gauging trial counsel's performance. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013).

A claim of ineffective assistance of counsel must be "'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). The record's limitations often render a direct appeal inadequate to raise a claim of ineffective assistance of counsel, as trial counsel is unable to respond to any articulated concerns. *See Goodspeed*, 187 S.W.3d at 392. Ordinarily, trial counsel should be given "an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Therefore, when the record is silent as to trial counsel's strategy, a reviewing court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. Rather, when direct evidence of trial counsel's strategy is unavailable, "we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143.

The State called Valdez's son, A.V., to testify during punishment. Before he took the stand, defense counsel objected that his testimony would be unduly

20

prejudicial. The trial court overruled this objection. A.V. then testified about his relationship with his father. The State asked why he was worried about his dog. A.V. responded that he was worried "because my dog still thinks that my dad is at work . . . . I feel like I can see what he is thinking like when is my dad coming home . . . ."

Ivey contends that her counsel should have objected to A.V.'s testimony about his dog, which may have been inadmissible as improper or prejudicial victim-impact evidence.

During the punishment phase of trial, "evidence may be offered by the state . . . as to any matter the court deems relevant to sentencing . . . ." TEX. CODE. CRIM. PROC. art. 37.07. Victim-impact evidence is evidence concerning the effect the victim's death will have on others, particularly the victim's family members. *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005). Victim-impact evidence is "admissible at the punishment phase when that evidence has some bearing on the defendant's personal responsibility and moral culpability." *Id*. But victim-impact evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Salazar v. State*, 90 S.W.3d 330, 335–36 (Tex. Crim. App. 2002). In determining whether victim-impact evidence is unfairly prejudicial, courts must consider: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but

21

nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *See Salazar*, 90 S.W.3d at 336.

A.V.'s testimony had a bearing on Ivey's moral culpability, reminding the jury that her driving while intoxicated had foreseeable consequences to the victim's family, who also suffered harm as a result of her conduct. *See id.* To the extent a valid objection might have been available, the record is silent as to why trial counsel did not object to testimony about A.V.'s concern for the family dog. The record could have been supplemented by a hearing on a motion for new trial, but no motion for new trial was filed. Ivey has failed to meet her burden under the first prong of *Strickland* to show that her allegations of ineffective assistance of counsel are firmly founded in the record, *see Menefield*, 363 S.W.3d at 592, and to overcome the presumption of reasonable performance by trial counsel, who has had no opportunity to respond to the complaints made for the first time on appeal. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

When the issue on appeal is ineffective assistance of counsel, we cannot reverse unless both prongs of *Strickland* are satisfied. *See id.* at 687, 104 S. Ct. at 2064. We conclude that Ivey has not satisfied the first prong of the *Strickland* analysis, and we need not consider whether she has satisfied the requirements of

the second prong. *See Lopez*, 343 S.W.3d at 143. Accordingly, we overrule this issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).