**Opinion issued October 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-17-00506-CR

———————————

**JUSTIN JAMES FORSYTH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Case No. 16-CR-1930

## MEMORANDUM OPINION

A jury convicted appellant, Justin James Forsyth, of intoxication manslaughter and assessed his punishment at 15 years' confinement and a $10,000 fine. In two issues on appeal, appellant contends that (1) the evidence was legally

insufficient to support his conviction and (2) the cumulative effect of prosecutorial misconduct deprived him of due process. We affirm.

## BACKGROUND

On a Sunday afternoon, July 17, 2015, four-year-old A.D. ["the child"] was playing with a toy truck in a ditch near his house on 10th Street in Bacliff, Texas. There were several other neighborhood children playing outside and several adults watching them play.

A neighbor, Kelly Willey, was outside with his brother, Jacob Willey, and Jerod Douthit, when he heard the rev of a motorcycle. Jacob testified that he saw appellant driving a motorcycle, turning onto 10th street from Jackson Street, and almost clipping the stop sign in the process. Kelley saw that appellant was "going kind of recklessly" and driving on the wrong side of the street. Jacob noticed that appellant "didn't seem as if he knew what he was doing exactly" and was driving in the middle of the street, while leaning hard to the left.

At that time, the child pushed his toy truck into the road from the left side and was struck by appellant. The child's mother, Edna, testified that

> [Appellant] was on the wrong side of the road, and everyone was yelling at him. He kept driving. His focus was on the road but looking down like if it was like he was rolling a teddy bear. He could hear everybody screaming, but he kept going like he did not know what he was doing. His eyes was looking down at the road.

2

Another witness, the child's great-aunt Maria, testified that appellant never reacted, braked, or tried to avoid the child.

Kelley ran down toward the accident and helped Edna call 911. He then approached appellant, smelling "faint alcohol." Appellant tried to leave the scene, saying, "I've got to go, I've got to go," but Jacob told him, "No, man, you messed up; you've got to stay here." Kelley and Jacob made sure that appellant remained at the scene.

Deputy F. Boas, who was dispatched to the scene, testified that appellant's eyes were red and glassy, he smelled like alcohol, and his speech was slurred. Boas administered two standard field sobriety tests to appellant, both of which appellant failed. Based on this information, appellant was arrested.

The child was transferred by EMS to a nearby hospital, but he died of head injuries on the way. Appellant was also transported to the hospital with a broken ankle. The paramedic, J. Grimm, testified that appellant seemed to be under the influence of something. Appellant told Grimm that he would beat the charge because he was not intoxicated. However, on the way to the hospital, appellant admitted to Grim that he had been drinking, but stated that the accident was not his fault.

A doctor at the hospital believed that appellant was intoxicated "because I could smell alcohol on his breath," so he ordered a blood-alcohol content test. The

toxicology result of this test showed a blood-alcohol level of 0.260. Blood taken later by police pursuant to a search warrant showed appellant's blood-alcohol level to be approximately 0.23, or almost three times the legal limit of 0.08.

The State's accident reconstructionist, Deputy Creech, testified that 10th street was approximately 19 feet wide and that the area of impact was 8 feet from the left side of the road. Creech stated that vehicles were supposed to be on the right side of the road, especially on an unmarked roadway. Creech opined that appellant's intoxication caused the crash, stating:

> In this case, it's my opinion that, had he been sober, he would have been on the right side of the roadway. He would have perceived the child—the children out there and would have slowed down and then been prepared to react if they had maybe come out of the roadway. And had he been on the right half of the roadway where he belonged, then even if a child had come out into the street in this instance they would not have collided.
>
> . . . .
>
> [H]ad [appellant] not been intoxicated, he could have perceived the danger, he could have slowed down, he could have avoided the situation.

After hearing the evidence detailed above, a jury convicted appellant of intoxication manslaughter, found a deadly weapon allegation to be true, and assessed punishment at 15 years' confinement. Appellant brings this appeal, asserting two issues.

## INTOXICATION MANSLAUGHTER

In issue one, appellant contends that the evidence is legally insufficient to establish the necessary elements of intoxication manslaughter. Specifically, appellant contends that the evidence is insufficient to show that his intoxication was the cause of the child's death.

### *Standard of Review and Applicable Law*

We review the sufficiency of the evidence to support a criminal conviction by determining whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact was justified in rationally finding the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We measure the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Brooks*, 323 S.W.3d at 922. On appeal we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). For purposes of proving guilt beyond a reasonable

doubt, direct and circumstantial evidence are equally probative. *Jones v. State*, 458 S.W.3d 625, 630 (Tex. App. —Houston [1st Dist.] 2015, pet. ref'd).

A person commits the offense of intoxication manslaughter if the person: (1) operates a motor vehicle in a public place; (2) is intoxicated; and (3) by reason of that intoxication causes the death of another by accident or mistake. *See* TEX. PENAL CODE § 49.08. Section 6.04 of the Texas Penal Code provides, "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE § 6.04(a).

*Analysis*

Appellant does not dispute that he was intoxicated,[1] but argues that his intoxication did not cause the child's death. Appellant argues that, "[c]ontrary to the State's argument that [the child] died because an intoxicated condition caused Appellant to drive on the wrong side of the street, the record shows that Appellant drove to the center or slightly left of center because Appellant was taking evasive action to protect several children who were playing in the street."

---

[1] Indeed, appellant's blood-alcohol content, when take by medical personnel two hours after the accident, was 0.26, and when taken pursuant to a search warrant after that appellant's blood-alcohol content was 0.23.

6

In support, appellant points to his own testimony, in which he claimed that he revved his engine, which was louder than his horn, to warn several children who were playing on the right side of the street, and that he drove to the left of the center line to avoid those children. As he did so, he claimed that the child unexpectedly pushed his toy car into the street from the left side of the street, and ran into appellant's motorcycle.

Appellant also relies on the testimony of his expert witness, Richard Palacios, who testified that appellant showed very quick reaction time. Palacios testified that, "in less than a second, there's interaction between the child and the motorcycle and the motorcycle is laid over." Palacios theorized that it was "possible" that the child struck the motorcycle, rather than the motorcycle striking the child, and that a child running into the motorcycle would cause an alert driver to quickly lay the bike over to the other side.

Forsyth, however, admitted that, other than appellant's own statement, there was no evidence that there were children on the right side of the road who caused appellant to swerve to the left side of the road.

Appellant, however, contends that "[t]he only reasonable conclusion is that [he] took evasive action to protect the [other] children playing on the street." As the factfinder, the jury was entitled to disbelieve appellant's testimony that he swerved to the left to avoid children playing on the right side of the street. *See*

7

*Chambers*, 805 S.W.2d at 461 (stating jury may believe or disbelieve all or any part of witness's testimony). Instead, the jury was entitled to believe Creech, the State's accident reconstructionist, who testified that, in his opinion, if appellant had been sober he would have been driving on the right side of the roadway, he would have seen the child, he would have slowed down, he would have prepared to react, and he would not have collided with the child. The jury also could have believed the eyewitness, Kelley, who testified that appellant was driving recklessly, almost clipped a stop sign when he entered the street, and was, from the time of turning onto the street, driving on the left side of the road. There was also evidence that appellant never braked, tried to slow down, or stopped until after contact with the child. *See Kiciemba v. State*, 310 S.W.3d 460, 463 (Tex. Crim. App. 2010) ("[A] driver's failure to brake also provides some evidence that the accident was caused by intoxication").

While the jury also heard evidence that another factor may have contributed to the child's injuries, i.e., the child's entering the roadway from the left side of the street, a rational jury could conclude that this concurrent cause was not sufficient to produce the child's death. *See* TEX. PENAL CODE § 6.04(a) (holding that person is criminally responsible if death would not have occurred but for her conduct, operating either alone or concurrently with another cause, unless the concurrent

8

cause was sufficient to produce the result and the conduct of the actor clearly insufficient).

Based on the evidence presented, we conclude that a rational jury could have found beyond a reasonable doubt that the child's death would not have occurred but for appellant's driving while intoxicated, operating either alone or concurrently with another cause, and that this concurrent cause was insufficient to produce the child's death. Thus, we conclude that the evidence was sufficient to support the jury's finding that appellant's driving a motor vehicle in a public place while intoxicated caused the child's death. *See Wooten v. State*, 267 S.W.3d 289, 296 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that when intoxicated driver alleged that other road conditions caused accident, "even if other factors contributed in some way to the accident, these factors were not clearly sufficient to cause the fatalities in the case"); *Martinez v. State*, 66 S.W.3d 467, 469–70 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding sufficient evidence supported conclusion that truck driver's intoxication caused death of victims despite alleged improper loading and safety violations of truck).

We overrule appellant's first issue.

## PROSECUTORIAL MISCONDUCT

In issue two, appellant contends that he was denied due process because of prosecutorial misconduct. Specifically, he argues that (1) "the prosecutor

presented a series of statements to the jury[,] which had the effect of vouching for the testimony of witnesses who might prove her case," and (2) called two witnesses primarily for the purpose of impeaching them. The State argues that these issues are waived because appellant did not object at trial. We agree with the State.

Prosecutorial misconduct is an independent basis for objection that must be specifically urged to preserve error. *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App. —Houston [1st Dist.] 2004, pet. ref'd); *see also Temple v. State*, 342 S.W.3d 572, 603 n.10 (Tex. App. —Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013) (holding same); *Perkins v. State*, 902 S.W.2d 88, 96 (Tex. App.-—El Paso 1995, pet. ref'd) (holding appellant's failure to object on the basis of prosecutorial misconduct waived that asserted error on appeal). To preserve an alleged prosecutorial-misconduct error, a defendant must make a timely and specific objection, request an instruction to disregard the matter improperly placed before the jury, and move for a mistrial. *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995). Appellant did none of this, thus error is waived. *See Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012) (holding that evidentiary objections at trial did not present trial court with opportunity to rule on due process claim raised on appeal, thus due process claim was waived.).

While acknowledging that "[a]ppellant did not object to the evidence at trial," appellant, relying on *Rogers v. State*, 725 S.W.2d 350 (Tex. App.—Houston [1st Dist.] 1987, no pet.), contends that preservation was not required. *Rogers* involved flagrant and repeated misconduct by the prosecutor, who repeatedly made side-bar remarks and suggested inflammatory facts that lacked evidentiary support. *Id.* at 358–61. The Court concluded that the prosecutor acted in bad faith and that her behavior "could serve no purpose other than to inflame and prejudice the minds of the jurors." *Id.* at 360. Based on these facts, the defendant was allowed to raise prosecutorial misconduct as a point of error on appeal, even though he failed to preserve the point of error. *Id.* at 359–60. In so holding, this Court stated:

> Whe[n] there is serious and continuing prosecutorial misconduct that undermines the reliability of the fact[–]finding process or, even worse, transforms the trial into a farce and mockery of justice, as occurred here, resulting in deprivation of fundamental fairness and due process of law, the defendant is entitled to a new trial even though few objections have been perfected. *Id.*

We cannot say that the prosecutor's conduct in this case was the sort of flagrant repeated misconduct at issue in *Rogers* or that the conduct deprived appellant of fundamental fairness or due process of law. As such, appellant's failure to object to prosecutorial misconduct waives that issue. *See Wilson v. State*, No. 01-16-00256-CR, 2017 WL 2590292, at *8 (Tex. App.—Houston [1st Dist.] June 15, 2017, no pet.) (mem. op., not designated for publication) (holding that trial objection was required to argue on appeal that prosecutors committed

11

misconduct in repeatedly emphasizing HIV status of appellant, improperly bolstering complainant, and bypassing rules of evidence to elicit improper testimony).

We overrule issue two.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).