# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00478-CR

---

**Sisto Quiroz, III, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 277TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 16-3069-K277, THE HONORABLE STACEY MATHEWS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Sisto Quiroz, III, was charged with one count of aggravated robbery and one count of burglary of a habitation. *See* Tex. Penal Code §§ 29.03, 30.02.[1] The jury charge contained lesser-included-offense instructions for aggravated assault for both counts. *See id.* § 22.02. The jury acquitted Quiroz of aggravated robbery and burglary but found him guilty of the lesser-included offense of aggravated assault in both counts, and the jury sentenced him to twelve years' imprisonment in each count. *See id.* § 12.33. In fifteen issues on appeal, Quiroz argues that the evidence supporting his convictions is legally insufficient, that the trial court erred by entering a deadly weapon finding, and that the trial court erred in denying his request for a lesser-included-offense instruction for theft for the first count. We will affirm the trial court's judgments of conviction.

---

[1] The indictment also alleged one count of aggravated assault, but the State later abandoned that count.

## BACKGROUND

On the night in question, Gary Eddleman and Amy Rogers were in their apartment along with their two roommates. When someone knocked on the door, Rogers went downstairs to see who was there. As she opened the door, she saw three men and a woman. All three men were holding guns. One man was wearing a bandana over part of his face, and another man was wearing a ski mask. Both of the masked men were also wearing gloves, and one of the masked men had shorts on and had tattoos on his legs. The unmasked man and the unmasked woman were Jason Williams and Kami Hanlon, with whom Eddleman and Rogers were both acquainted. Hanlon was also wearing gloves.

After Rogers went to the door, Williams forced the door open, and the two other men followed him up the stairs. Hanlon held a taser to Rogers, tased her multiple times, and kicked her. While in the house, the three men demanded money and drugs. The men zip-tied the hands and feet of Rogers, Eddleman, and the other two roommates, and one of the men covered Rogers's mouth with duct tape. Eddleman was able to break his zip ties, and one of the offenders told him that they would kill him if he broke the ties again. Williams was holding what Eddleman described at trial as an "SKS" rifle. Eddleman also testified that one of the men was holding a revolver and that the other man was holding a shotgun. At trial, a photograph of a shotgun seized by the police during their investigation was admitted into evidence, and Eddleman testified that he recognized the shotgun as being one of the weapons used at the apartment. During the incident, Williams pointed the "SKS" rifle at Eddleman's head, and the offenders eventually moved the four roommates to the bedroom of the apartment.

While Rogers, Eddleman, and the other two roommates were in the bedroom, one of the offenders pointed a gun with a laser sight at Rogers's face, demanded the title to her car,

2

and told her that if she did not give them the title by the following day, they would return to the apartment and kill her. Following this exchange, the four offenders closed the bedroom door and left the apartment. Eddleman was able to get out of his zip ties again, released the others from their zip ties, and called the police. On a recording of the 911 call, Eddleman stated that the offenders left approximately two minutes ago, that the offenders had guns, and that one of the offenders was Hanlon. After the offenders left, Rogers and Eddleman realized that the offenders had taken several items from the apartment, including a duffel bag, her purse, and her iPhone.

The police arrived at the apartment a few minutes after Eddleman called 911 and observed broken zip ties and duct tape in the apartment. Before the police arrived, Eddleman remembered that he could use the Find My iPhone app to track the location of Rogers's cell phone and handed his phone to the police when they arrived so that they could track the location of her phone. When the app would provide an update regarding the location of Rogers's phone, the officer would announce the location over the radio so that officers throughout the city would be on the lookout. The app eventually indicated that Rogers's phone had stopped moving approximately thirty-five to forty minutes after the incident and was near a Super 8 Motel along a highway.

Within a few minutes of hearing the latest update on the iPhone's location, several groups of police officers responded to the motel. One of the responding officers saw four individuals—three men and one woman—near a car in the motel parking lot, and he and his partner waited for more police to arrive before approaching them. When more police arrived, they broke into two groups so that they could approach the individuals from two directions. At that time, the group of four was walking on the motel's second-story walkway. After the officers began approaching and told the group to place their hands in the air, two of the men and the

woman, who were later identified as Williams, Hanlon, and Michael Gonzalez, complied with the officers' directives, but the final member of the group, who was later identified as Quiroz, quickly walked away from the group while carrying a duffel bag. Quiroz later dropped the duffel bag, placed his back against a concrete pillar, and began reaching in his waistband. Quiroz did not respond to the officers' commands for several minutes but ultimately complied. An audio recording of the exchange between the officers and Quiroz was admitted as an exhibit. In addition, photographs of Quiroz from shortly after he was arrested were admitted into evidence and showed him wearing shorts and showed that he has tattoos on one of his legs.

While the four individuals were being arrested, the police discovered that Quiroz had a loaded Glock 23 handgun in his waistband, a "double edged dagger style blade" that was attached to his shorts, a tire changing tool in his waistband, and bullets in his jacket pocket. In addition, the duffel bag that Quiroz was seen carrying contained a loaded "Chinese SKS semiautomatic rifle," a large knife, ammunition, zip ties, a black ski mask, and his wallet and identification card. In addition, the officers discovered that Williams was wearing a backpack, and the backpack contained a loaded shotgun that had a laser pointer attached to it. The officers did not find any weapons on Hanlon but did find two purses near her. The first purse had a taser in it as well as Hanlon's identification card. During her testimony, Rogers identified the other purse as the one that was taken from the apartment, and photographs of the purse's contents showed that the purse contained several of Rogers's identification cards. The police also discovered that one of the rooms at the motel had been rented under Quiroz's name. When the police officers looked inside the car in the parking lot, they saw black gloves, latex gloves, a black ski mask, zip ties, a roll of duct tape, and ammunition for a shotgun.

4

After Quiroz was arrested, he was charged with aggravated robbery and burglary of a habitation. The alleged victim of the robbery was Rogers, and the alleged victim of the burglary was Eddleman. At the conclusion of the guilt-innocence phase, the jury acquitted Quiroz of the charged offenses but found him guilty of the lesser-included offense of aggravated assault against both victims. The trial court included deadly weapon findings in both judgments of conviction. Quiroz appeals his convictions.

## DISCUSSION

In his first and second issues on appeal, Quiroz contends that the evidence was legally insufficient to support his two convictions for aggravated assault. In his third through fourteenth issues, Quiroz challenges the propriety of the deadly weapon findings in both judgments of conviction. In his final issue, Quiroz asserts that the trial court erred by denying his request for a lesser-included instruction for theft in the first count.

### Sufficiency of the Evidence

Under the Penal Code, an individual commits the offense of assault if he "intentionally or knowingly threatens another with imminent bodily injury" and commits the offense of aggravated assault if he "uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code §§ 22.01(a), .02(a). Moreover, as specified in the jury charge in this case, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

"Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*,

5

602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id*. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id*. "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id*., and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014). The evidence is legally

insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320).

On appeal, Quiroz contends that the evidence is insufficient to establish his identity as one of the offenders at the apartment. As support for this assertion, Quiroz highlights that no witnesses testified that he was present at the apartment when the offenses occurred, that no witness saw the car found at the motel at the apartment complex, and that the car at the motel was never linked directly to him. Further, Quiroz contends that the description of the clothing worn by one of the offenders that the State argued was him at trial did not match what he was wearing when he was arrested. Although Quiroz admits that the evidence showed that he "was associated with the unloading of a vehicle that contained stolen property and items used in the" offenses and "was found with stolen property," he urges that evidence establishing his proximity to the stolen property was insufficient to establish his identity as one of the offenders. On the contrary, Quiroz contends that the evidence showed that he was "possibly helping individuals known and identified with the offense to possibly unload a vehicle which possibly contained property stolen from the victims."

Similarly, although Quiroz acknowledges that the evidence established that he did not cooperate with the police officers' directives at the motel, he asserts that the evidence did not establish that he was attempting to flee from the officers because he was arrested on the same floor of the motel that the officers initially found him. Moreover, even though Quiroz concedes that he was in the presence of individuals identified by witnesses as being involved in the offenses when he was arrested, he contends that guilt by association is "contrary to our system of justice" and should not be used to support his conviction and further argues that he was not seen

7

in the company of Hanlon and Williams until a significant period of time after the offenses occurred. Relatedly, Quiroz highlights that the Find My iPhone app showed that the phone took an indirect route to the motel, did not chronicle everywhere Rogers's phone went nor provide continuous updates, and therefore, could not have shown if the vehicle stopped to allow him to get into the car after the incident at the apartment. Further, Quiroz asserts that the evidence showed that, unlike the individuals identified as having been at the apartment, he had a reason to be at the motel because he was a registered guest and was arrested near his room. Finally, Quiroz urges that evidence indicating that he might have assisted a primary actor to escape or that he may have helped unload the vehicle used by the offenders is insufficient to establish his identity as a culpable actor under the law of parties.

Viewing the evidence in the light most favorable to the verdicts and resolving any conflicts in the evidence in favor of the convictions, the evidence presented at trial established that Hanlon, Williamson, and two masked men went to Eddleman and Rogers's apartment; that the three men were carrying a handgun, an SKS rifle, and a shotgun; and that the four offenders zip-tied Eddleman, Rogers, and their roommates before taking their property, including Rogers's iPhone and a duffel bag. The evidence also established that the police were able to track the location of Rogers's iPhone using an app, that the app showed that the cell phone was driven to a Super 8 Motel, that several police officers arrived at the motel within approximately forty minutes of the incident and within a few minutes of when the app indicated that the phone was near the motel, and that the police observed a group walking from a car in the parking lot toward a room on the second floor of the motel where the police engaged the individuals and identified them, including Quiroz, Hanlon, and Williamson.

8

Additionally, the evidence established that Quiroz unsuccessfully attempted to get away from the police when they announced their presence before he positioned himself against a wall, disregarded the police officers' instructions for several minutes, and placed his hands in his waistband where he had multiple weapons. *Cf. Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) (explaining that evidence of flight evinces consciousness of guilt); *Palomo v. State*, 352 S.W.3d 87, 91 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (observing that defendant's decision to barricade himself during standoff with police was indicative of his guilt). Further, the group of offenders was found in possession of items taken from the apartment, weapons matching the description of weapons used at the apartment, items similar to those worn by the offenders (e.g., ski masks and gloves), zip ties like those used to bind the arms and legs of the victims, and duct tape like the tape placed over Rogers's mouth. *Cf. Holloway v. State*, No. 05-05-01117-CR, 2006 WL 1545379, at *2 (Tex. App.—Dallas June 7, 2006, pet. ref'd) (op., not designated for publication) (noting that State can prove identity "through circumstantial evidence such as . . . recent and unexplained possession of stolen property"). Regarding Quiroz, he was seen carrying a duffel bag that contained his wallet and identification card as well as an SKS rifle, a ski mask, and zip ties like those used during the incident. Moreover, Rogers and Eddleman described one of the masked male offenders as wearing shorts and having tattoos on his legs, and photos of Quiroz from the night of his arrest shortly after the incident showed him wearing shorts and having tattoos on one of his legs.

Based on this evidence and bearing in mind the reasonable inferences that the jury could have made from that evidence, we conclude that the evidence is sufficient to establish Quiroz's identity as one of the offenders in the two aggravated-assault counts. *See Jones v. State*, 458 S.W.3d 625, 630 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (stating that

9

identity of alleged perpetrator may be proven with circumstantial evidence); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (observing that identity may be established by inference).

Accordingly, we overrule Quiroz's first two issues on appeal.

**Deadly Weapon Finding**

In his third through fourteenth issues on appeal, Quiroz challenges the propriety of the deadly weapon findings made in both of the trial court's judgments of conviction.

The indictment in this case alleged in count one that Quiroz committed aggravated robbery while using or exhibiting a deadly weapon and alleged in count two that he committed burglary of a habitation while attempting to commit or committing aggravated assault with a deadly weapon. The indictment also contained a deadly weapon allegation stating that Quiroz used or exhibited a deadly weapon (a firearm) "during the commission of the charged offense or during the immediate flight therefrom, or was a party to the charged offense and knew that a deadly weapon would be used or exhibited." The portion of the jury charge pertaining to the aggravated-robbery count included lesser-included-offense instructions asking the jury to consider whether Quiroz was guilty "of the lesser included offense of aggravated assault with a deadly weapon" if it found him not guilty of aggravated robbery and directed the jury to consider whether he, acting alone or as a party, intentionally or knowingly threatened or placed Rogers in fear of imminent bodily injury or death while he was using or exhibiting "a deadly weapon, namely: a firearm." Similarly, the portion of the jury charge for the burglary count included lesser-included-offense instructions directing the jury to consider whether Quiroz was guilty of aggravated assault with a deadly weapon if it acquitted him of burglary and asked the jury

10

to determine if he, acting alone or as a party, intentionally or knowingly threatened or placed Eddleman in fear of bodily injury or death while he was using or exhibiting "a deadly weapon, namely: a firearm." The jury charge also included a special-issue instruction pertaining to the burglary offense and directed the jury to determine whether Quiroz used or exhibited a deadly weapon if it determined that he committed the offense of burglary. After acquitting Quiroz of burglary but finding him guilty of the lesser offense of aggravated assault, the jury answered "We do not" on the deadly weapon special issue relating to the burglary. At the end of the guilt-innocence phase, the trial court read the jury's two verdicts finding Quiroz guilty of "aggravated assault with a deadly weapon." Further, the trial court read the jury's finding on the special issue and explained that the jury entered its finding as directed because there was no burglary conviction.

On appeal, Quiroz contends that the inclusion of deadly weapon findings in the two judgments of conviction was erroneous because there was no affirmative deadly weapon finding by the jury. *See* Tex. Code Crim. Proc. art. 42A.054(b)-(d); *Johnson v. State*, 233 S.W.3d 420, 424 (Tex. App.—Fort Worth 2007, pet. ref'd). More specifically, Quiroz contends that no special issue regarding the use of a deadly weapon accompanied the portions of the jury charge setting out the lesser-included offenses of aggravated assault and that courts may not look to the facts of a case in order to imply a deadly weapon finding. Moreover, Quiroz argues that since the jury charge included instructions under the law of parties, there should have been but was not a specific finding by the trier of fact that he personally used or exhibited a deadly weapon before the deadly weapon findings could have permissibly been included in the judgments of conviction. Next, Quiroz references the special-issue finding for the greater offense of burglary, argues that the jury's finding was an express determination that he did not

11

use or exhibit a deadly weapon during any of the alleged offenses, contends that juries are entitled to return a negative deadly weapon finding even when the use of a deadly weapon is a necessary element of the offense for which the defendant was convicted, and urges that the jury's determination on a deadly weapon finding should not be disturbed even if it is inconsistent with their guilty verdicts.

Building on these arguments, Quiroz also contends that the deadly weapon findings violated his right to have a jury decide every element of the offense and his right to have the elements of his charges proven beyond a reasonable doubt. Similarly, Quiroz argues that the deadly weapon findings were barred by double jeopardy and by collateral estoppel because the jury had already answered the deadly weapon finding in his favor or, alternatively, did not make an express deadly weapon finding. Finally, Quiroz urges that the deadly weapon findings were improper because they were not orally pronounced when his sentence was imposed and, accordingly, that the inclusion of the deadly weapon findings violated his due-process rights.

As an initial matter, we note that a trial court must enter a deadly weapon finding when a jury makes an affirmative finding that a deadly weapon "was used or exhibited during the . . . commission of a felony offense; or . . . immediate flight from the commission of a felony offense; and . . . the defendant . . . used or exhibited a deadly weapon; or . . . was a party to the offense and knew that a deadly weapon would be used or exhibited." Tex. Code Crim. Proc. art. 42A.054(b)-(d). Although it is true that jury answered "We do not" on the special issue set out in the charge, that deadly weapon special issue was limited to the burglary offense, asked the jury to find whether it found beyond a reasonable doubt that Quiroz used or exhibited a deadly weapon "during the commission of the offense of Burglary of a Habitation," and provided the jury with only two options for answering the special issue: writing "We do" or "We do not."

12

Given the limited nature of the special issue and given that the jury acquitted Quiroz of the offense to which the special issue applied, we cannot agree with Quiroz's argument that by answering "We do not" in the circumstances present here, the jury expressly determined that no deadly weapon was used in the aggravated assaults. The finding was not a finding by the jury that Quiroz did not use or exhibit a deadly weapon during any of the other charged or lesser offenses and was instead a reflection that the jury acquitted him of the burglary offense.

Similarly, we disagree with Quiroz's suggestion that the jury made no express deadly weapon finding for the two aggravated-assault convictions. *See Guthrie-Nail v. State*, 506 S.W.3d 1, 4 (Tex. Crim. App. 2015) (observing that "[a]n affirmative deadly-weapon finding must be an 'express' determination in order to be effective"); *see also Polk v. State*, 693 S.W.2d 391, 393 (Tex. Crim. App. 1985) (explaining that "affirmative finding" means express determination by jury that deadly weapon was exhibited or used). In determining whether an express determination has been made, courts "look to the charging instrument, the jury charge, and the jury verdict to evaluate the propriety of an entry of a deadly-weapon finding in the judgment." *Duran v. State*, 492 S.W.3d 741, 746 (Tex. Crim. App. 2016). Although an express determination can be based on the language of the indictment or on a special issue regarding the use of a deadly weapon, *id.*, for cases in which a defendant is found guilty of a lesser-included offense, a deadly weapon finding is authorized when a jury finds the defendant guilty of a lesser-included offense based on the jury-charge application paragraph that "explicitly and expressly" requires the jury to find that the defendant used a deadly weapon while committing the offense because it is an element of the offense, *see Lafleur v. State*, 106 S.W.3d 91, 98 (Tex. Crim. App. 2003). In other words, for cases involving convictions for lesser-included offenses, a jury makes an express finding that a deadly weapon was used or exhibited when the following occurs:

13

1) the indictment specifically alleges the use of "deadly weapon;"

2) the jury charge's application paragraph on a lesser-included offense requires a finding from the jury beyond a reasonable doubt that the defendant committed an offense using the alleged "deadly weapon;" and

3) the jury finds the defendant guilty of that lesser-included offense.

*Duran*, 492 S.W.3d at 747.

As set out above, the indictment in this case alleged that Quiroz committed the offense of aggravated robbery while using or exhibiting "a deadly weapon, namely, a firearm" and committed the offense of burglary while attempting to commit or committing the offense of aggravated assault with a deadly weapon. The indictment also contained a deadly weapon allegation. The application paragraphs for the two lesser-included offenses asked the jury to consider whether Quiroz was guilty beyond a reasonable doubt of committing "the lesser included offense of aggravated assault with a deadly weapon" and directed the jury to consider whether he, "acting alone or as a party," intentionally or knowingly threatened or placed Rogers and Eddleman in fear of imminent bodily injury or death while he was using or exhibiting "a deadly weapon, namely: a firearm."

The jury necessarily made express deadly weapon findings when it found him guilty of the lesser offenses because "the jury could not have convicted" Quiroz of either aggravated assault, "even as a party, unless it found his participation in the offense was accompanied by the intent to promote or assist the commission of the offense[s]." *McTier v. State*, No. 14-08-00476-CR, 2009 WL 1875684, at *2 (Tex. App.—Houston [14th Dist.] June 30, 2009, pet. ref'd) (mem. op., not designated for publication); *see* Tex. Penal Code § 7.02(a)(2). "Because the use of a deadly weapon was an element of" those offenses, "before the jury could have convicted" Quiroz, "it also must have believed beyond a reasonable doubt

14

that he knew that a deadly weapon would be used in the commission of the offense[s]." *McTier*, 2009 WL 1875684, at \*2; *see also Johnson v. State*, No. 01-06-00979-CR, 2007 WL 2874824, at \*3 (Tex. App.—Houston [1st Dist.] Oct. 4, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that there was no error in including deadly weapon finding even if defendant was convicted as party to offense because by convicting defendant jury "necessarily . . . found that" defendant "intended to promote or assist the other men in robbing the complainant with a deadly weapon and that he knew a deadly weapon would be used in the commission of the offense"); *Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (concluding that deadly weapon finding was proper and explaining that "where the use of a deadly weapon is an element of the offense, the State automatically carries the burden of proving the defendant knew a weapon would be used or exhibited in the commission of the offense" and that "before jurors were authorized to find [defendant] guilty, even as a party, they first had to believe beyond a reasonable doubt that [defendant] knew a deadly weapon would be used in the commission of the offense").

For these reasons, the trial court's inclusion of the deadly weapon findings in its judgments of conviction was consistent with the jury's deadly weapon determinations, was consistent with the statutory provision setting out when a deadly weapon finding must be included in a trial court's judgment, and did not contravene any jury determination that no deadly weapon was used during the offenses. *See* Tex. Code Crim. Proc. art. 42A.054(b)-(d); *see also Duran*, 492 S.W.3d at 746 (explaining that affirmative finding under statute means "*express* determination that a deadly weapon . . . was actually used or exhibited during the commission of the offense"). In light of the preceding, we must also conclude that the deadly weapon findings were not barred by double jeopardy or collateral estoppel and did not violate Quiroz's right to

have the jury decide the elements of the offenses or his right to have the elements of the offenses proven beyond a reasonable doubt.

Turning to Quiroz's argument that the deadly weapon findings were improper because they were not orally pronounced when his punishments were imposed, we recognize that there is a statutory obligation that a defendant's sentence be pronounced in his presence, *see* Tex. Code Crim. Proc. art. 42.03, and that when there is a dispute between a written judgment of conviction and the oral pronouncement, the trial court's oral pronouncement controls, *see Ette v. State*, 559 S.W.3d 511, 515 (Tex. Crim. App. 2018). However, "the expectation of having the oral pronouncement match the written judgment applies only to sentencing issues, such as the term of confinement assessed and whether multiple sentences will be served concurrently or consecutively." *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005). Although a deadly weapon finding "may impact a sentence," it is not part of "a 'sentence'" as contemplated by the legislature. *State v. Ross*, 953 S.W.2d 748, 751 (Tex. Crim. App. 1997); *see* Tex. Code Crim. Proc. art. 42.02 (defining sentence as "that part of the judgment . . . that orders that the punishment be carried into execution in the manner prescribed by law"). In other words, although "a deadly-weapon finding does affect a defendant's eligibility for probation and parole, it does not alter the range of punishment to which the defendant is subject, or the number of years assessed." *Ex parte Huskins*, 176 S.W.3d at 821. For those reasons, "a trial court is not required to orally announce a deadly-weapon finding at sentencing if the allegation of use of a deadly weapon is clear from the face of the indictment." *Id.*

As mentioned above, the indictment in this case alleged that Quiroz used or exhibited a deadly weapon during both charged offenses, and the application paragraphs in the jury charge for the lesser-included offenses instructed the jury to find him guilty only if, among

16

other things, it determined beyond a reasonable doubt that he, either personally or as a party, used or exhibited a deadly weapon while committing the offenses. When the jury found Quiroz guilty, it made affirmative deadly weapon findings, and "the district court was free to enter a deadly-weapon finding even though it did not make an oral pronouncement regarding the finding when it imposed its sentence." *See Diaz v. State*, No. 03-15-00539-CR, 2016 WL 1084398, at *5 (Tex. App.—Austin Mar. 17, 2016, no pet.) (mem. op., not designated for publication). Accordingly, we conclude that the inclusion of the deadly weapon findings did not violate Quiroz's due-process rights and that the trial court did not err by including those findings in its judgments of conviction without orally pronouncing them. *See Ex parte Huskins*, 176 S.W.3d at 820-21 (overruling claim asserting that defendant's due-process rights were violated when deadly weapon finding was not orally pronounced before being included in written judgment).

For all of these reasons, we overrule Quiroz's third through fourteenth issues on appeal.

## Lesser-Included Offense

In his fifteenth issue on appeal, Quiroz contends that the trial court erred by denying his request for an instruction on the lesser-included offense of theft for the first count.

Appellate courts "use a two-step analysis to determine if a defendant is entitled to a lesser-offense instruction." *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018). "The first step is to determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law." *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). "An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of

17

the offense charged." Tex. Code Crim. Proc. art. 37.09(a)(1). In analyzing whether a lesser-included-offense instruction was warranted, reviewing courts "do not consider what the evidence at trial may show but only what the State is required to prove to establish the charged offense." *Cannon v. State*, 401 S.W.3d 907, 910 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Reviewing courts then "compare these elements to those of the potential lesser-included offense . . . and decide whether the elements of the lesser offense are functionally the same or less than those required to prove the charged offense." *Id.*; *see also* Tex. Code Crim. Proc. art. 37.09 (defining lesser-included offenses). "An offense is a lesser-included offense of another offense . . . if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g).

Regarding the first step, consistent with the Penal Code, the indictment alleged that Quiroz committed robbery by intentionally or knowingly threatening or placing Rogers in fear of imminent bodily injury or death while he was "in the course of committing theft" and while using or exhibiting a deadly weapon. *See* Tex. Penal Code §§ 29.02, .03. "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). Further, a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). Appropriation is unlawful if "it is without the owner's effective consent" or if "the property is stolen and the actor appropriates the property knowing it was stolen by another." *Id.* § 31.03(b). "It is well settled that when the indictment alleges that a

18

defendant committed robbery by causing bodily injury or threatening to cause bodily injury in the 'course of committing theft,' the offense of theft is necessarily a lesser-included offense of the robbery." *Knott v. State*, 513 S.W.3d 779, 795 (Tex. App.—El Paso 2017, pet. ref'd). "It follows that theft is a lesser included offense of aggravated robbery" where the element that elevates the case to aggravated status is the use of a deadly weapon. *See Jones v. State*, 280 S.W.3d 294, 297 (Tex. App.—Amarillo 2007, pet. ref'd). Accordingly, the first step is satisfied in this case.

To satisfy the second step, "there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense." *Ritcherson*, 568 S.W.3d at 671. "That requirement is met if there is (1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Id.* Appellate courts "consider all the evidence admitted at trial, not just the evidence presented by the defendant, and if there is more than a scintilla of evidence raising the lesser offense and negating or rebutting an element of the greater offense, the defendant is entitled to a lesser-charge instruction." *Id.* "It does not matter whether the evidence is controverted or even credible," *id.*, nor does it matter "whether that evidence is weak or strong," *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). "If the evidence raises the issue, the trial court must include an instruction in the jury charge." *Ramirez v. State*, 263 S.W.3d 40, 42 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

As support for his assertion that a lesser-included-offense instruction should have been given, Quiroz highlights that no witnesses identified him as one of the offenders from the apartment. From the absence of identifying witness testimony, Quiroz postulates that the jury

19

could have concluded that he was not guilty of robbery or aggravated assault but concluded that he was guilty of the offense of theft based on the evidence establishing that he was found in possession of recently stolen property and that the items taken from the apartment were appropriated without the consent of the owners of the property. In other words, Quiroz argues that the jury could have inferred from the evidence presented that he exercised control over the stolen property after individuals other than himself stole the property from the apartment. Based on the preceding, Quiroz contends that he was entitled to an instruction because the evidence was susceptible to two interpretations: (1) he was guilty of the charged offense of aggravated robbery, or (2) he was simply guilty of possessing stolen property. Additionally, Quiroz highlights that the jury rejected the first interpretation by acquitting him of the charged offense, was improperly denied the option of considering the second option, and therefore, convicted him of the only lesser offense included in the charge for the first count.

However, "[i]t is not sufficient to raise the lesser offense if the jury may have simply disbelieved crucial evidence pertaining to the greater offense," and "[t]here must be some evidence directly germane to the lesser-included offense to warrant such an instruction." *See Carson v. State*, 422 S.W.3d 733, 747 (Tex. App.—Texarkana 2013, pet. ref'd). Although the officer who used the iPhone app to track Rogers's stolen iPhone acknowledged that the app did not provide continuous updates, that he did not start tracking the stolen phone immediately upon his arrival, that there were delays in the updates that lasted several minutes, and that he did not know if the car being tracked stopped anywhere before reaching the motel to let individuals in or out of the car, no evidence was presented during the trial indicating that Quiroz was not one of the four offenders at the apartment or that he acquired property stolen from the apartment after the four offenders left the apartment. On the contrary, shortly after the offense, Quiroz was seen

20

in the company of the two suspects identified by eye witnesses, attempted to flee from the police at the motel, and was carrying a duffel bag containing a weapon matching the description of one of the weapons used in the offense, a black ski mask similar to the one worn by one of the suspects, zip ties like those used during the offense that had been "pre-staged to form modified hand restraints," and his wallet. Moreover, Eddleman and Rogers both testified that one of the suspects who covered his face was wearing shorts and had tattoos on his leg, and photographs taken shortly after Quiroz's arrest showed that he was wearing shorts and had tattoos on his leg.

Accordingly, we conclude that no evidence was presented showing that if Quiroz was guilty of an offense, he was guilty only of theft. *Compare Sweed v. State*, 351 S.W.3d 63, 69 (Tex. Crim. App. 2011) (noting that central question at trial was whether defendant "pulled knife on [the victim] during or in immediate flight after the commission of the theft" and concluding that more than scintilla of evidence was present to allow jury to conclude that defendant was guilty of theft only and not aggravated robbery where evidence showed that defendant fled with stolen item, stayed in his apartment for twenty minutes, and then left his apartment to talk with other group of individuals for five to ten more minutes before seeing victim and brandishing his weapon), *with Knott*, 513 S.W.3d at 796, 797 (determining that trial court did not err by failing to provide lesser-included instruction for theft in robbery case where defendant relied on single statement from victim that he did not initially realize that he had been punched because that statement when read in context was "not affirmative evidence that no assault took place during the course of the theft").

For these reasons, we overrule Quiroz's last issue on appeal. *Cf. Patterson v. State*, No. 09-12-00576-CR, 2014 WL 1778373, at *5 (Tex. App.—Beaumont Apr. 30, 2014,

21

pet. ref'd) (mem. op., not designated for publication) (overruling issue asserting that trial court should have included lesser-included instruction).

## CONCLUSION

Having overruled all of Quiroz's issues on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed: January 14, 2021

Do Not Publish